IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | | |
|---|---|---|
| Morgan Hill, | : | |
| | : | Case No. 1:25-cv-643 |
| Plaintiff, | : | |
| | : | Judge Susan J. Dlott |
| v. | : | |
| | : | Order Granting in Part and Denying in |
| Childtime Childcare, Inc., | : | Part Defendant's Motion to Dismiss |
| | : | |
| Defendant. | : | |

This matter is before the Court on Defendant Childtime Childcare, Inc.'s Motion to

Dismiss.  (Doc. 18.)  Plaintiff Morgan Hill has asserted wrongful termination, whistleblower, and

defamation claims under Ohio law against Childtime arising from the termination of her

employment with Childtime.  (Doc. 23.)  For the reasons that follow, the Court will **GRANT IN**

**PART** and **DENY IN PART** the Motion to Dismiss.

I.       **BACKGROUND**

A.       **Facts Alleged**

The following well-pleaded facts in the Amended Complaint are assumed to be true for

the purposes of the pending Motion to Dismiss.  Childtime hired Hill as a Director in Training in

March 2024.  (Doc. 23 at PageID 128.)  Hill was promoted to the Director of the Childtime

Learning Center in downtown Cincinnati on July 4, 2024.  (*Id.*)

At the center, Hill "immediately encountered severe issues with staff conduct and facility

safety, including broken classroom gates, unsanitary environments, lack of basic health and

safety protocols, and staff unfamiliar with required procedures."  (*Id.*)  Hill submitted multiple

maintenance requests regarding the presence of mice from August through November 2024, but

she received insufficient responses from management.  (*Id.* at Page 129.)  The mice issue triggered a visit from the Health Department.  (*Id.*)  Hill and an assistant director personally cleaned infected areas.  (*Id.*)  The mice infestation was determined to be a building-wide issue and "beyond Plaintiff's duties."  (*Id.*)

Licensing specialists, including Carlie Bennett, visited the center four times between July 4, 2024 and December 20, 2024.  (*Id.*)  Hill tried "to improve communication, clarify expectations, and rebuild working relationships" with the licensing specialists.  (*Id.*)  Though the facts alleged are not set forth with clarity, it appears that Bennett issued a moderate non-compliance citation related to the child-to-staff ratio at the center, but Bennett was unable to provide specific dates or documentation supporting the citation.  (*Id.*)  Then on January 3, 2025, Bennett and a licensing supervisor, Trentae Taylor, conducted an inspection to investigate complaints related to false documentation.  "The false documentation complaint was [initially] classified as 'unable to determine.'"  (*Id.* at PageID 130.)  However, the written licensing report that followed categorized the false documentation complaint as "serious" and "substantiated."  (*Id.*)  It stated that Hill had provided false documentation related to Step Up to Quality ("SUTQ") compliance.  (*Id.*)  Hill denied the allegation.  She stated that she had shared a staffing list created for internal planning purposes with the licensing specialists, but she had not submitted it through SUTQ procedures nor intended it to satisfy SUTQ requirements.  (*Id.*)  The licensing specialists also initially substantiated a complaint about a mice-related violation, but that substantiated complaint was withdrawn after Hill's objections.  (*Id.*)

Hill expressed frustration to her supervisor, the district manager, Jean Scott, "about the increasing frequency of licensing visits, the short windows between inspections, and the negative impact these visits were having on staff morale."  (*Id.* at PageID 130–131.)  Scott made visits to

2

the center to check on the center's progress under Hill's leadership.  (*Id.* at PageID 131.)  Scott told Hill that she was satisfied about progress being made in lesson planning, classroom processes, and strategies for enrollment growth.  (*Id.* at PageID 131.)  During one of Scott's visits to the center, Scott directed Hill to obtain permission slips from parents for daily park outings, despite not wanting the outings to occur, simply to satisfy outdoor activity licensing requirements.  (*Id.*)  The center did not have an outdoor play space.  (*Id.*)  Hill did not carry out the directive "recognizing the ethical and regulatory implications."  (*Id.*)

On January 10, 2025, the Health Department conducted a follow-up inspection and noted significant improvements.  (*Id.*)  Likewise, a field safety specialist conducted an audit on January 15, 2025 and noted substantial progress from the conditions Hill had inherited.  (*Id.*)

On January 23, 2025, Hill was again asked by a supervisor to take steps she believed violated Ohio statutory and regulatory requirements regarding the use of public funds:

> On January 23, 2025, Plaintiff received a phone call from Director Samantha Feyka, acting on behalf of District Manager Jean Scott, following up on a previous directive for her to manipulate the center's third-party subsidy allocations. Plaintiff was asked to enter children's attendance at a charge of one dollar or even one penny, with the goal of generating credits from state subsidy payments, which were to then be applied toward unpaid balances from the previous administration. Plaintiff recognized that this request was improper, quietly declined to proceed with the reallocation, and documented her concerns internally.

(*Id.* at PageID 131–132.)  Then, on January 24, 2025, Hill again discussed her frustration about the licensing findings with Scott.  (*Id.* at PageID 132.)

Hill was placed on administrative leave pending investigation on January 27, 2025 without written explanation.  (*Id.*)  That same day she submitted a formal ethics complaint to the Learning Care Group's Human Resources Department "documenting concerns about retaliatory treatment, pressure to alter ODJFS records, and unethical directives regarding permission slips."

3

(*Id.*)  On February 3, 2025, Hill's newly retained attorney informed Childcare that he was representing Hill in this matter.  (*Id.*)[1]  Scott, the district manager, attempted to contact Hill directly on February 12, 2025, but Hill did not respond because she was represented by counsel.  (*Id.* at PageID 133.)  Childtime issued a letter formally terminating Hill's employment on February 14, 2025.  (*Id.*)  Childtime had not responded to her ethics complaint and had not issued her any negative reviews or disciplinary warnings prior to her termination.  Hill asserts that her termination was retaliatory and "directly connected to her protected internal complaints about licensing compliance and ethical concerns."  (*Id.*).

**B.     Procedural Posture**

Hill initiated this suit without the representation of counsel by filing a Complaint against the Childtime and the Learning Care Group, Inc. in the Hamilton County Court of Common Pleas on July 24, 2025.  (Doc. 2.)  Defendants removed the suit to this Court based on diversity jurisdiction under 28 U.S.C. § 1332.  (Doc. 1.)

Hill then filed her Amended Complaint naming Childtime as the sole Defendant.  (Docs. 17, 23.)[2]  She asserts three counts for relief:

Count 1—Wrongful termination in violation of public policy;

Count 2—Retaliation in violation of Ohio Revised Code § 4113.52; and

Count 3—Defamation, libel, and/or slander.

(Doc. 23 at PageID 133–135.)  Childtime now has moved to dismiss the Amended Complaint.  (Doc. 18.)  Hill filed a Response in Opposition, to which Childtime filed a Reply.  (Docs. 24–

---

[1] Despite this factual assertion that she had an attorney, Hill is proceeding *pro se* in this case.

[2]  The Court ordered Hill to refile the initial Amended Complaint because she had not complied with the signature requirement of Federal Rule of Civil Procedure 11(a).

25.)

## II.    STANDARD OF LAW ON A DISMISSAL MOTION

Federal Rule of Civil Procedure 12(b)(6) allows a party to move to dismiss a complaint for "failure to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). To withstand a motion to dismiss, a complaint must comply with Federal Rule of Civil Procedure 8(a), which requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–678 (2009) (quoting Rule 8(a)(2)). A *pro se* plaintiff's complaint must be "liberally construed" and "held to less stringent standards" that pleadings drafted by attorneys. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (per curiam).

A complaint must include sufficient facts to state a claim that is plausible on its face and not speculative. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. Mere "labels and conclusions [or] a formulaic recitation of the elements of a cause of action" will not suffice. *Twombly*, 550 U.S. at 555. A complaint must contain "either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *DiGeronimo Aggregates, LLC v. Zemla*, 763 F.3d 506, 509 (6th Cir. 2014) (citation omitted). However, it "does not need detailed factual allegations" or "heightened fact pleading of specifics." *Twombly*, 550 U.S. at 555, 570. A district court examining the sufficiency of a complaint must accept well-pleaded facts as true, but not legal conclusions or legal conclusions couched as factual allegations. *Iqbal*, 556 U.S. at 678–679; *DiGeronimo Aggregates*, 763 F.3d at 509.

### III.    ANALYSIS

Childtime asserts that Hill failed to assert a claim upon which relief can be granted in the Amended Complaint.  The Court will examine each of Hill's claims in turn.

### A.    Wrongful Discharge in Violation of Public Policy Claim

In Count 1 of the Amended Complaint, Hill asserts that she was wrongfully terminated in violation of public policy.  (Doc. 23 at PageID 133–134.)  She asserts that she was terminated for pretextual reasons because she engaged in whistleblowing activities.  Specifically, she asserts that she "engaged in protected activity by reporting licensing inconsistencies, unsafe conditions, and unethical administrative directives to her employer—including her refusal to submit parent permission slips under false pretenses, her objection to manipulating PFCC subsidy billing records, and her efforts to clarify licensing citations that lacked factual or procedural basis."  (*Id.* at PageID 133.)

Ohio law recognizes a public policy exception to the general employment-at-will doctrine, commonly called a "*Greeley* claim." *Himmel v. Ford Motor Co.*, 342 F.3d 593, 598–599 (6th Cir. 2003) (referring to *Greeley v. Miami Valley Maint. Contractors, Inc.,* 49 Ohio St.3d 228, 551 N.E.2d 981 (1990), *overruled in part by Tulloh v. Goodyear Atomic Corp.,* 62 Ohio St.3d 541, 584 N.E.2d 729 (1992)).  The elements of a *Greeley* claim for wrongful discharge in violation of public policy are as follows:

> 1. That [a] clear public policy existed and was manifested in a state or federal constitution, statute or administrative regulation, or in the common law (the clarity element).
>
> 2. That dismissing employees under circumstances like those involved in the plaintiff's dismissal would jeopardize the public policy (the jeopardy element).
>
> 3. The plaintiff's dismissal was motivated by conduct related to the public policy (the causation element).

4. The employer lacked overriding legitimate business justification for the dismissal (the overriding justification element).

*Himmel*, 342 F.3d at 598 (quoting *Collins v. Rizkana*, 73 Ohio St. 3d 65, 652 N.E.2d 653, 657–658 (1995)).  The Court must determine the clarity and jeopardy elements as a matter of law.  *See Collins*, 652 N.E.2d at 658.

Hill argues that multiple statutes support her *Greeley* claim including Ohio Revised Code § 4113.52, Chapter 5104, and criminal statutes prohibiting falsification and theft by deception.  The Court first will address Chapter 5104, which governs the operations of childcare facilities in Ohio.  Among other things, Chapter 5014 set standards for child-to-staff ratios, space requirements including outdoor play space, and the SUTQ program.  *See* Ohio Rev. Code §§ 5104.032, 5104.033, 501.429.  Chapter 5104 states a clear public policy in favor of compliance with its rules and regulations governing childcare facilities.  It authorizes the denial or revocation of a license as a penalty for the failure to comply or the knowing submission of false information.  *See* Ohio Rev. Code § 5104.04(C).[3]  Chapter 5104 also prohibits an employer from discharging or taking other adverse actions against an employee solely for reporting a violation of Chapter 5104 or refusing to perform work which constitutes a violation of any provision of the chapter or its regulations.  *See* Ohio Rev. Code. § 5104.10.[4]  Childtime does not

---

[3]  The statute states: "The department may deny an application or revoke a license of a center, type A home, or licensed type B home, if the applicant knowingly submits falsified information to the department or if the center or home does not comply with the requirements of this chapter or rules adopted pursuant to this chapter."  Ohio Rev. Code § 5104.04(C).

[4]  The statute provides as follows:

No employer shall discharge, demote, suspend, or threaten to discharge, demote, suspend, or in any manner discriminate against any employee based solely on the employee taking any of the following actions:

dispute that Chapter 5104 is adequate to satisfy the clarity and jeopardy elements of a wrongful termination of public policy claim under Ohio law.

Instead, Childtime points out that Hill did not plead a separate claim for retaliation in violation of Ohio Revised Code § 5104.10 in the Amended Complaint.  The Court will not dismiss the wrongful termination in violation of public policy claim on that basis, however, for two reasons.  First, § 5104.10 does not explicitly create a private cause of action or set forth remedies available to an aggrieved employee.  The Court could not find any cases in which a claim under that section has been litigated.  As such, it is not clear that § 5104.10 would provide a sufficient remedy to Hill for the violation alleged.  The Court will not fault her for not pleading a claim under that statute.  Second, the Court interprets Hill's Amended Complaint liberally because she is acting *pro se*.  *See Erickson*, 551 U.S. at 94.  Hill alleges in the Amended Complaint that she made internal complaints about licensing issues, the pressure to alter records, and ethical concerns, and that her termination was "directly connected" to those issues.  (Doc. 23 at PageID 131–134.)  These allegations are sufficient at the pleading stage to assert a *Greeley* claim for wrongful termination in violation of the public policy expressed in Ohio Revised Code Chapter 5104.

The Court will not dismiss Count 1.  The Court need not determine at this time whether

---

(A) Making any good faith oral or written complaint to the director of children and youth or other agency responsible for enforcing Chapter 5104. of the Revised Code regarding a violation of this chapter or the rules adopted pursuant to Chapter 5104. of the Revised Code;
(B) Instituting or causing to be instituted any proceeding against the employer under section 5104.04 of the Revised Code;
(C) Acting as a witness in any proceeding under section 5104.04 of the Revised Code;
(D) Refusing to perform work that constitutes a violation of Chapter 5104., or the rules adopted pursuant to Chapter 5104. of the Revised Code.

Ohio Rev. Code § 5104.10.

other grounds for the public policy claim exist. However, for the reasons explained in the following subsection, Hill cannot base her *Greeley* claim on an alleged violation of Ohio Revised Code § 4113.52.

**B.      Ohio Revised Code § 4113.52 Claim**

In Count 2, Hill alleges that she was terminated in violation of Ohio's Whistleblower Statute, Ohio Revised Code § 4113.52. (Doc. 23 at PageID 134.) The statute provides in relevant part as follows:

> If a person becomes aware in the course of the person's employment of a violation of any state or federal statute or any ordinance or regulation of a political subdivision that the person's employer has authority to correct, *and the person reasonably believes that the violation is a criminal offense that is likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety*, a felony, or an improper solicitation for a contribution, the person orally shall notify the person's supervisor or other responsible officer of the person's employer of the violation and subsequently shall file with that supervisor or officer a written report that provides sufficient detail to identify and describe the violation. If the employer does not correct the violation or make a reasonable and good faith effort to correct the violation within twenty-four hours after the oral notification or the receipt of the report, whichever is earlier, the person may file a written report that provides sufficient detail to identify and describe the violation with the prosecuting authority of the county or municipal corporation where the violation occurred, with a peace officer, with the inspector general if the violation is within the inspector general's jurisdiction, with the auditor of state's fraud-reporting system under section 117.103 of the Revised Code if applicable, or with any other appropriate public official or agency that has regulatory authority over the employer and the industry, trade, or business in which the employer is engaged.

Ohio Rev. Code § 4113.52(A)(1)(f) (emphasis added).

Hill alleges that she took the following whistleblowing actions:

> 47. Plaintiff made good-faith internal complaints regarding Defendants' violations of applicable childcare licensing regulations, unsafe and unsanitary conditions at the center, inconsistent and unsupported licensing citations, and improper administrative directives—including a request to falsify PFCC attendance and billing records to misallocate public funds.

9

48. Plaintiff refused to participate in the fraudulent directive to manipulate child care subsidy allocations and documented her objections internally. On January 24, 2025, Plaintiff communicated directly with her supervisor, Jean Scott, seeking clarity and accountability by raising licensing concerns and requesting transparency in inspection findings. These actions constitute protected activity under Ohio Revised Code § 4113.52.

\* \* \*

50. On January 27, 2025, Plaintiff submitted a formal ethics complaint outlining her concerns. Defendants proceeded with termination proceedings without affording Plaintiff basic procedural protections.

(Doc. 23 at PageID 134.)  Hill submitted the formal ethics complaint "to Learning Care Group's Human Resources Department, documenting concerns about retaliatory treatment, pressure to alter ODJFS records, and unethical directives regarding permission slips."  (Doc. 23 at PageID 132.)  Childtime moves to dismiss the claim on the grounds that Hill failed to strictly comply with the written-notice, timing, and sequencing requirements of § 4113.52.

The Ohio Supreme Court explained that § 4113.52 provides "specific procedures that an employee must follow to gain statutory protection as a whistleblower" because the statute "contemplate[s] that the employer shall be given the opportunity to correct the violation." *Contreras v. Ferro Corp.*, 73 Ohio St. 3d 244, 652 NE.2d 940, 942–943, 944 (1995).  It stated:

[R.C. 4113.52(A)(1)(f)] protects an employee for reporting certain information to outside authorities *only* if the following requirements have first been satisfied: (1) the employee provided the required oral notification to the employee's supervisor or other responsible officer of the employer, (2) the employee filed a written report with the supervisor or other responsible officer, and (3) the employer failed to correct the violation or to make a reasonable and good faith effort to correct the violation. Further, [R.C. 4113.52(A)(1)(f)] sets forth the *sole acceptable manner* in which the employee may "blow the whistle" to outside authorities. Specifically, the employee may file a written report that provides sufficient detail to identify and describe the violation with the proper prosecuting authority or other appropriate official or agency with regulatory authority over the employer and the industry, trade or business in which the employer is engaged. An employee who fails to follow the specific requirements of the statute is not a

> protected whistleblower and, accordingly, may not bring a wrongful discharge
> action pursuant to R.C. 4113.52.

*Id.* 652 N.E.2d at 944 (emphasis in the original).[5]

The Court agrees with Childtime that Hill did not strictly comply with the requirements of § 4113.52(A)(1)(f). Hill alleges that she made an oral complaint to her supervisor, Jean Scott, on January 24, 2025 and then submitted a formal ethics complaint to her employer's Human Resources Department on January 27, 2025. (Doc. 23 at PageID 132, 134.) These actions are deficient in two respects. First, Hill has not alleged that she reported the type of violations that would satisfy the strict whistleblower requirement. Hill's oral complaints to Scott were to "express[ ] frustration about licensing findings" to "recount her prior conversations about licensing staff." (*Id.* at 132.) Her formal ethics complaint addressed different topics: "concerns about retaliatory treatment, pressure to alter ODJFS records, and unethical directives regarding permission slips." (*Id.*) She has not alleged that in either the oral complaint or the formal ethics complaint she was reporting a violation that she believed was a "criminal offense that [was] likely to cause an imminent risk of physical harm to persons or a hazard to public health or safety" as required by § 4113.52(A)(1)(f).

Second, she made her oral complaint and her written formal ethics complaint to different people. (Doc. 23 at PageID 132, 134.) The statute requires the employee to make the written report *to the same person* to whom she complained orally. Ohio Rev. Code § 4113.52(A)(1)(f) ("[T]he person orally shall notify the person's supervisor or other responsible officer of the person's employer of the violation and subsequently shall file with *that supervisor or officer* a

---

[55] In a previous version of the statute applicable in 1995, the substantive provisions contained in § 4113.52(A)(1)(F) were found in § 4113.52(A)(1)(a).

written report . . . ." (emphasis added)). This requirement serves the goal of giving the supervisor or officer the ability to correct the violation. Because Hill did not strictly comply with the requirements of § 4113.52(A)(1)(f), she has not stated a whistleblower claim under that statute. Further, she cannot assert a *Greeley* claim based solely on the public policy embodied in that statute. A plaintiff cannot maintain a common-law cause of action for wrongful discharge based on the public policy stated in § 4113.52 unless she complied with the requirements of § 4113.52. *See Contreras*, 652 N.E.2d at 944; *Siemaszko v. FirstEnergy Nuclear Operating Co.*, 187 Ohio App. 3d 437, 443, 932 N.E.2d 414, 419, 2010-Ohio-2121, ¶ 21 (2010). The Court will dismiss Count 2.

## C.     Count 3

Hill alleges in Count 3 that Childtime is liable for defamation per se because it published "false and defamatory statements" about her "by asserting to third parties (including licensing specialists and agency personnel) that [she] falsified documents related to Step Up to Quality (SUTQ) compliance." (Doc. 23 at PageID 135.) The prima facie elements of a defamation claim are "(1) a false statement of fact, (2) that was defamatory, (3) that was published, (4) that the plaintiff suffered injury as a proximate result of the publication, and (5) that the defendant acted with the requisite intent in publishing the statement." *Green v. Mason*, 504 F. Supp. 3d 813, 829 (S.D. Ohio 2020). Childtime moves to dismiss on the basis that Hill did not plead the "who, what, when, and where" of the alleged defamation with sufficient particularity and that its statements were protected by a qualified privilege.

"A qualified privilege is recognized in many cases where the publisher and the recipient have a common interest, and the communication is of a kind reasonably calculated to protect or further it." *Hahn v. Kotten*, 43 Ohio St. 2d 237, 244, 331 N.E.2d 713, 718 (1975). The

"essential elements [of a qualified privilege] good faith, an interest to be upheld, a statement limited in its scope to this purpose, a proper occasion, and publication in a proper manner and to proper parties only." *Hahn v. Kotten*, 43 Ohio St. 2d 237, 244, 331 N.E.2d 713, 719 (1975).  A privilege based on common interest can arise in the employment context.  "[A] communication made in good faith on a matter of common interest between an employer and an employee, or between two employees concerning a third employee, is protected by qualified privilege." *Kanjuka v. MetroHealth Med. Ctr.*, 151 Ohio App. 3d 183, 197, 783 N.E.2d 920, 931, 2002-Ohio-6803, ¶ 42 (2002).  A plaintiff can overcome a qualified privilege if she can show that the defendant acted with "actual malice" in making the false statement.  *Id.* 783 N.E.2d at 932. Actual malice is proven with evidence that a statement was made "with knowledge that the statements are false or with reckless disregard of whether they were false or not."  *Hahn*, 331 N.E.2d at syllabus ¶ 2.  At the pleading stage, a plaintiff must allege that the defendant acted with actual malice and provide facts that make the allegation of actual malice plausible.  *See Green*, 504 F. Supp. 3d at 832; *see also Ohio Poly Corp. v. Packaging & Handling Supplies Co.*, 44 Ohio App. 3d 88, 90, 541 N.E.2d 485, 488 (1988) (stating that where a qualified privilege applies, the plaintiff must prove actual or constructive malice as an element of its claim at summary judgment).

Here, Hill has alleged in Count 3 that "Defendants" published false statements to third-party licensing specialists and agency personnel that she falsified SUTQ compliance documents. (Doc. 23 at PageID 135.)  The only Defendant is her employer, Childtime.  Statements by her employer that she falsified work-required documents would fall within the common interest of her employment, and therefore, would be subject to a qualified privilege defense.  That triggers Hill's duty to plead that Childtime acted with actual malice in making the alleged defamatory

statements. *See Green*, 504 F. Supp. 3d at 831–832 ("A complaint asserting a defamation claim as to which the actual malice standard applies must set forth facts establishing that the statements were made with malice to avoid dismissal." (cleaned up)). Hill pleaded that the defamatory statements "were false, malicious, and made without regard for the truth." (Doc. 23 at PageID 135.) But such conclusory allegations are not sufficient in the absence of alleged facts supporting the conclusion.

The Amended Complaint factual allegations are difficult to follow. Hill alleges that "Defendants" published false statements to licensing specialists and agency personnel that she falsified documents related to SUTQ compliance. (*Id.* at PageID 135.) Hill identifies two licensing specialists in the Amended Complaint—Carlie Bennett and Trentae Taylor—but no other so-called agency personnel. (*Id.* at PageID 130.) Hill does not identify any specific false statement made by a Childtime supervisor or manager to Bennett or Taylor. She alleges only that Bennett and Taylor on January 3, 2025 investigated "various complaints, including an allegation that center administrators had submitted false documentation." (*Id.*) Hill does not identify who made the complaints that Bennett and Taylor investigated, nor when nor how the complaints were made. The Court will not infer that the "various complaints" were made by someone at Childtime because there is no basis to believe that Childtime would want to subject its employee, and in turn itself, to increased scrutiny by licensing specialists. These Amended Complaint allegations—even under Federal Rule of Civil Procedure 8(a) pleading standard of a "short and plain statement . . . showing the pleader is entitled to relief"—lack the clarity to state a plausible claim for defamation. Hill also does not provide a factual basis to make it plausible that the unidentified complainant knew or should have known that the accusation that Hill falsified SUTQ documents was false. Accordingly, the Court finds that Hill has failed to state a

14

defamation claim and failed to plead a claim that can overcome Childtime's qualified privilege defense. The Court will dismiss Count 3.

## IV. CONCLUSION

For the reasons above, Childtime Childcare, Inc.'s Motion to Dismiss (Doc. 18) is **GRANTED IN PART AND DENIED IN PART**. Counts 2 and 3 of the Amended Complaint are dismissed. Count 1 is not dismissed.

**IT IS SO ORDERED.**

BY THE COURT:


S/Susan J. Dlott
Susan J. Dlott
United States District Judge

15